UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------×
DORIS ORTIZ-RIVERA,

          *Plaintiff,*

          v.

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE
CITY OF NEW YORK and COLUMBIA UNIVERSITY
IRVING MEDICAL CENTER,

          *Defendants.*
---------------------------------------------------------------------×

24-CV-9919

**COMPLAINT**

Plaintiff Doris Ortiz-Rivera, by her counsel, Young & Ma LLP, alleges for her Complaint against Defendants The Trustees of Columbia University in the City of New York and Columbia University Irving Medical Center, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Doris Ortiz-Rivera ("Plaintiff" or "Ms. Ortiz-Rivera") seeks damages and costs against Defendants The Trustees of Columbia University in the City of New York and Columbia University Irving Medical Center (collectively, "Columbia" or the "University" or "Defendants") for discriminating against and stereotyping her based on her race and gender, and among other things, subjecting her to a hostile work environment and wrongfully terminating her from her employment after she reported discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2. Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues who provide similar or the same work and have similar or the same credentials and experience as Plaintiff in violation of N.Y. Labor Law § 194.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII.

4. On or about November 10, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

5. Plaintiff requested a "right to sue" letter from the EEOC on or about September 26, 2024. The EEOC issued a Right to Sue Letter on September 27, 2024, which was received by Plaintiff on the same day.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and N.Y. Lab. Law § 194 claims as they are so related to the Title VII claim that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8. Ms. Ortiz-Rivera, at all times relevant hereto, was and is a resident of Bronx County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Defendant The Trustees of Columbia University in the City of New York is an independent, privately supported, nonsectarian institution of higher education in New York.

10. Upon information and belief, at all times relevant hereto, Defendant Columbia University Irving Medical Center employs over 13,000 people and provides international leadership in basic, preclinical, and clinical research; medical and health sciences education; and patient care.

11. At all relevant times to this action, Plaintiff worked for Defendant The Trustees of Columbia University in the City of New York at Defendant Columbia University Irving Medical Center.

## STATEMENT OF FACTS

12. Ms. Ortiz-Rivera has been working on a double major in Economics and Finance from Herbert H. Lehman College. She worked at reputable New York institutions such as Beth Israel Medical Center, Mount Sinai Medical Center, and Continuum Health Partners before starting at Columbia University Irving Medical Center.

13. Ms. Ortiz-Rivera gave Columbia 16 years of loyal service and it would have been longer if she were not wrongfully terminated.

14. Ms. Ortiz-Rivera started in April 2007 as an Executive Assistant to Susie Stalcup, Senior VP for Development. She accepted the position due to Columbia's reputation and it was closer to home for her to care for her 2 year old son. Plaintiff's son is the center of her life outside of work and it is unbelievable that she was terminated from Columbia just as he was starting college and when she had earned tuition reimbursement, which they will no longer enjoy.

15. As many Columbia University Irving Medical Center employees know, tuition payments are a major benefit of working at Columbia and why so many employees work loyally for years.

16. In August 2009, Ms. Ortiz-Rivera transferred to stewardship under AVP Ann Viney. She was promoted in September 2010 based on merit. By June 2011, she had a thank you letter from Amelia Alverson, who is the VP for Development.

17. In 2012, Ms. Ortiz-Rivera was reassigned to Erin Jadney ("Erin") and again promoted to Associate Director with no change in pay. She worked in Donor Relations.

18. In June 2013, Erin surprisingly asked Ms. Ortiz-Rivera whether she had an Exacto knife, which definitely only happened because Plaintiff is a Latina woman.

19. Erin explained she meant "a switchblade" after and Ms. Ortiz-Rivera reported this incident to Sony Jean Michele ("Sony") and filed an EEOC Charge.

20. It was very insulting for any experienced senior Black/Brown woman to be asked if she is carrying a knife at work, especially when working in uptown Manhattan near the Bronx, where stereotypes are pervasive.

21. Ms. Ortiz-Rivera experienced continuous disrespect since October 2013. Erin came to her office and yelled at her in front of Bill Devers about a signage project, crossing her arms and putting her hand in Plaintiff's face, saying "wait!" Ms. Ortiz-Rivera also reported this to Sony. At this point, HR and Columbia started to recognize that Plaintiff was not going to tolerate pervasive race and gender stereotypes at work, which unfortunately also put a permanent stain on her career.

22. In February 2014, Sony (HR) said training was conducted but did not mention anti-retaliation and consequences for retaliation either to Ms. Ortiz-Rivera or any of the other participating witnesses.

23. In June 2014, Ms. Ortiz-Rivera filed an EEOC Charge.

24. Afterwards, Ms. Ortiz-Rivera was reassigned to Ann Viney ("Ann").

25. In December 2015, Lauren Perlmutter ("Lauren") came as a Senior ED for communications and donor relations and Ann and Ms. Ortiz-Rivera reported into Lauren.

26. In May 2016, Ms. Ortiz-Rivera spoke to Lauren directly about running stewardship program alone and asked for a salary increase.

27. In June 2016, Ann gave Ms. Ortiz-Rivera her review and requested she be promoted.

28. Ann retired and then Ms. Ortiz-Rivera was treated terribly once again for prior HR complaints and as a Latina older woman who speaks up.

29. On March 17, 2017, Ms. Ortiz-Rivera was supposed to meet with Lauren but instead Ilene Anesini and Regine Grandmougin (a Black woman hired to avoid promoting Plaintiff as she had complained/filed EEOC Charge and yet Columbia wanted to defend the allegations by hiring another Black woman). Regine was hired as a Senior ED to Patient Facilitated Services and Stewardship.

30. On May 2017, Ms. Ortiz-Rivera had a meeting with Angela Hurdle, Regine Grandmougin, and Gina Maman where Angela was hostile and although she asked Plaintiff to report it to Ilene Anesini in HR, Angela resigned, further painting Ms. Ortiz-Rivera as a HR problem although she suggested HR resolution and so do Columbia policies.

31. In June 2017, Ms. Ortiz-Rivera applied for the Senior Director of Stewardship position, although opportunities were more freely given to others.

32. Columbia kept saying it was reviewing candidates for months.

33. In February 2018, Ms. Ortiz-Rivera was called "sensitive" due to her speaking up about targeting by Caroline Hastings for her own failure to follow up on items needed to submit the professorship establishment materials.

34. It was the second time Regine called Ms. Ortiz-Rivera sensitive. The first time was because Plaintiff said the word bullying when discussing her promotion application. Regine considered Ms. Ortiz-Rivera's legitimate and sincerely held discrimination complaints all just Plaintiff being "sensitive" and as if no due process or response were warranted.

35. Regine tried to excuse Caroline's conduct by saying she apologized to Regine but that is not respecting Ms. Ortiz-Rivera or resolving the issue with Plaintiff.

36. At a March 16, 2018 meeting to address concerns, Ilene in HR said Ms. Ortiz-Rivera is not allowed to ask questions or make comments.

37. It was the same month Ms. Ortiz-Rivera was told she would not be considered for the Senior Director of Stewardship position.

38. In November 2018, Regine asked if Ms. Ortiz-Rivera were recording a conversation and Plaintiff asked whether she should be.

39. In March 2019, Ms. Ortiz-Rivera asked Regine a simple question, whether Sara Patterson would be taking over the endowment reporting responsibility and she immediately copied HR, showing Plaintiff cannot communicate with trust without HR.

40. The Senior Director of Stewardship position had to be reclassified to Operations Coordinator to avoid hiring Ms. Ortiz-Rivera.

41. Danielle Robbins asked if Ms. Ortiz-Rivera would have a problem reporting to an outside individual hired into the position. Essentially, they were telling Plaintiff to stand down before a new person even starts. Ms. Ortiz-Rivera responded that if the person is more qualified than her, then of course she is happy to learn from them.

42. Jacob Liro was hired.

43. In May 2019, the office was closed Friday at 3 pm and Ms. Ortiz-Rivera asked for a small exception to leave at 2 pm. Regine said Plaintiff was grandfathered to working 8 am-4 pm but there was no such thing. Ms. Ortiz-Rivera left at 3:45 pm, which was later than the rest of the office and then Regine said she came looking for Plaintiff. Ms. Ortiz-Rivera had crossed her on the street and she didn't speak to Plaintiff so there was no emergency. She asked in the morning about a packet for work but Regine was more interested in documenting Ms. Ortiz-Rivera's departure time the prior day to come up with a pretextual reason to eventually terminate Plaintiff.

44. Regine also usually works from home so she came in only to catch Ms. Ortiz-Rivera just because Plaintiff had asked for an exception to meet with a colleague to discuss professorships in the Vanderbilt building. Therefore, instead of accommodating Ms. Ortiz-Rivera, Columbia saw an opportunity to "catch her" and write her up.

45. In November 2019, an HR representative, Danielle Robbins, told a story about how she was happy at a previous job but did not like her manager so she left. The message could not be more clear that if Ms. Ortiz-Rivera were unhappy that she should do the same to avoid retaliation/termination.

46. On December 12, 2019, Ms. Ortiz-Rivera was sick and Regine said rudely that Plaintiff was "sick for the holidays".

47. She would not let Ms. Ortiz-Rivera leave until 3 pm and Plaintiff had to go to urgent care the next day due to the asthma attack and then she was on steroid medication a week.

48. Columbia came to a conclusion of no discrimination as to Ms. Ortiz-Rivera's complaints.

49. In December 2020, Ms. Ortiz-Rivera was transferred to Sara Patterson ("Sara"), starting January 4, 2021, saying this was the final effort to work with Plaintiff.

50. Sara is the wife of the former Chair of Dermatology and not hired on merit. Ms. Ortiz-Rivera had to meet her weekly to train her on stewardship but it was clear Plaintiff will never be given the role.

51. Regina did not want to continue working with Ms. Ortiz-Rivera.

52. Ms. Ortiz-Rivera took two months leave in 2022.

53. In May 2022, Columbia said Ms. Ortiz-Rivera could not be granted the accommodations of different hours so Plaintiff came back full time not healed.

54. In June 2022, Regine excluded Ms. Ortiz-Rivera from the farewell lunch of Jacob Liro.

55. Ms. Ortiz-Rivera was also declined her earned vacation time of 15+ years.

56. In September 2022, Ms. Ortiz-Rivera was told to voice concerns to the Chief Diversity Officer, who had resigned.

57. In October 2022, Ms. Ortiz-Rivera asked to work from home when sick from the COVID-19 booster and was told no.

58. In March 2023, Ms. Ortiz-Rivera asked for a meeting with the Dean as a very long term employee suffering egregious and insufferable abuse and to discuss numerous complaints. Plaintiff was then fired that month to avoid that possibility.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Race and Gender Discrimination and Hostile Work Environment
### in Violation of Title VII

59. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

60. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of the Defendants.

61. Defendants were and are an employer within the meaning of Title VII.

62. At all times relevant to this case, Plaintiff was and is a Latina woman, and is a member of protected classes within the meaning of Title VII.

63. At all times, Defendants were aware of Plaintiff's race and gender.

64. Defendants engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's race and gender in the manner described in the Statement of Facts.

65. Plaintiff was subjected to a pervasive hostile work environment by the Defendants' conduct.

66. Ultimately, Plaintiff was wrongfully terminated by Defendants due to the retaliation caused by Defendants' actions based on Plaintiff's race and gender.

67. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, loss of salary, and continued advancement in her career. Plaintiff will also have suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses.

68. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish and lasting embarrassment and humiliation.

69. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Defendant under Title VII.

## SECOND CAUSE OF ACTION
### Race and Gender Discrimination in Violation of New York City Human Rights Law

70. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

71. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

72. At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

73. At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

74. At all times relevant to this case, Plaintiff was and is a Latina woman, and is a member of protected classes within the meaning of NYCHRL.

75. At all times, Defendants were aware of Plaintiff's race and gender.

76. Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's race and gender in the manner described in the Statement of Facts.

77. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

78. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

79. Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

80. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost bonuses; and (vi) attorney's fees and costs.

81. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

82. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

### THIRD CAUSE OF ACTION
### Race and Gender Discrimination in Violation
### of New York State Human Rights Law

83. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

84. This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

85. At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

86. At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

87. At all times relevant to this case, Plaintiff was and is a Latina woman, and is a member of protected classes within the meaning of NYSHRL.

88. At all times, Defendants were aware of Plaintiff's race and gender.

89. Defendants engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's race and gender in the manner described in the Statement of Facts.

90. Ultimately, Plaintiff was wrongfully terminated by Defendant due to the retaliation caused by Defendants' actions based on Plaintiff's race and gender.

91. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race and gender as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

92. Defendants are also liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

93. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

94. Plaintiff's damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

95. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## FOURTH CAUSE OF ACTION
### Violation of New York State Labor Law § 194

96. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

97. Plaintiff was an "employee" of Defendants as defined under N.Y. Lab. Law § 190(2).

98. Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

99. Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's gender and race.

100. Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bond fide factor, but rather is based on Plaintiff's status in protected classes.

101. The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Facts.

102. As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of Title VII and the NYSHRL and NYCHRL

103. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

104. Defendants violated Title VII, the NYSHRL, and the NYCHRL, because they knowingly retaliated against Plaintiff for reporting discrimination as alleged in the Statement of Facts above.

105. Defendants were aware that Plaintiff engaged in the protected activities alleged above.

106. Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above.

107. The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

108. As a direct and proximate result of the unlawful retaliation by Defendants, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

## JURY DEMAND

109. Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; and New York State Labor Law § 194, N.Y. Lab. Law § 194.

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendants' unlawful and discriminatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff liquidated damages;

G. Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I. Such other and further relief as the court deems appropriate to be determined at trial.

Dated: New York, New York
December 24, 2024

By: _____
Tiffany Ma, Esq.
Young & Ma LLP
445 Park Avenue, 9th Floor
New York, NY 10022
T: (646) 379-7703
tma@youngandma.com

*Counsel for Plaintiff Doris Ortiz-Rivera*